**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

In re:

Kenneth L. Raessler
& Claudia D. Raessler,

        Debtors

Chapter 7
Case No. 19-10320

## **MEMORANDUM OF DECISION**

On their Schedule C, the Debtors claim an exemption in the amount of $2,650 for certain art and paintings and an exemption in the amount of $525 for an antique curved glass cabinet. They identify Me. Rev. Stat. Ann. tit. 14, § 4422(16) as the law allowing these exemptions. The objection of TPL Financial Services, LLC to these claimed exemptions will be overruled.[1]

The parties' dispute raises several issues, including whether the Debtors — who do not own a residence — may invoke the unused residence exemption. The analysis begins with Maine's unused residence exemption, which protects from attachment and execution:

> [t]he debtor's interest, equal to any unused amount of the exemption provided under subsection 1 but not exceeding $6,000, in any property exempt under subsections 3 and 5 and subsection 14, paragraph D.

Me. Rev. Stat. Ann. tit. 14, § 4422(16). Section 4422(16) refers to the unused amount of the residence exemption provided by Me. Rev. Stat. Ann. tit. 14, § 4422(1):

> A. Except as provided in paragraph B, the debtor's aggregate interest, not to exceed $47,500 in value, in real or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor, except that if minor dependents of the debtor have their principal place of residence with the debtor, the debtor's aggregate interest may not exceed $95,000

---

[1] The Debtors also claim an exemption in the amount of $1,000 for household tools under Me. Rev. Stat. Ann. tit. 14, § 4422(3). TPL previously objected to this claim but withdrew its objection during a hearing on December 12, 2019.

and except that if the debtor's interest is held jointly with any other person or persons, the exemption may not exceed in value the lesser of $47,500 or the product of the debtor's fractional share times $95,000.

B. The debtor's aggregate interest, not to exceed $95,000 in value, in property described in paragraph A, if the debtor or a dependent of the debtor is either a person 60 years of age or older or a person physically or mentally disabled and because of such disability is unable to engage in substantial gainful employment and whose disability has lasted or can be expected to last for at least 12 months or can be expected to result in death; except that if the debtor's interest is held jointly with any other person or persons, the exemption may not exceed in value the lesser of $95,000 or the product of the fractional share of the debtor's interest times $190,000.  This paragraph does not apply to liens obtained prior to its effective date or to judgments based on torts involving other than ordinary negligence on the part of the debtor.

C. That portion of the proceeds from any sale of property which is exempt under this section shall be exempt for a period of 6 months from the date of receipt of such proceeds for purposes of reinvesting in a residence within that period.

Me. Rev. Stat. Ann. tit. 14, § 4422(1).

The unused residence exemption could be read to apply only where a debtor has an interest in a residence that can be exempted but does not utilize the full amount of the available exemption.  This is TPL's view of the statute.  Or, the unused residence exemption could instead be read to apply where the residence exemption was not fully utilized, whether or not the debtor owns a residence.  This is the Debtors' preferred construction of the statute.  Because the Maine Supreme Judicial Court has not decided whether the unused residence exemption can be used by an individual who does not own a residence, this case turns on a prediction about how that court would interpret the statute.  See Garran v. SMS Fin. V, LLC (In re Garran), 338 F.3d 1, 6 (1st Cir. 2003) (predicting how the Massachusetts Supreme Judicial Court would interpret the Massachusetts exemption statute).  In construing a statute, Maine courts "look first to the statute's plain meaning[,]" considering the entire statutory scheme to determine legislative intent.

In re Connors, 348 B.R. 1, 4-5 (Bankr. D. Me. 2006) (quoting Great N. Paper, Inc. v. Penobscot Nation, 770 A.2d 574, 580 (Me. 2001)).  Where a statute can reasonably be interpreted in more than one way, the Law Court may evaluate legislative intent in light of the statute's history, including "statements of fact accompanying proposed legislation" and "interpretations of federal counterpart statutes[.]"  Wawenock, LLC v. Dep't of Transp., 187 A.3d 609, 617 (Me. 2018).

    The Statement of Fact introducing the bill that eventually became Maine's exemption statute indicates that the purposes of the bill included adopting "the existing federal exemptions except where comparable state exemptions are more generous" and limiting "the pour-over provision adopted from federal law[.]"  L.D. 1642, Statement of Fact (110th Legis. 1981).  Because Maine's unused residence exemption was crafted with its federal counterpart in mind, an examination of the federal exemption statute and its legislative history is appropriate.

    The federal analog to Maine's unused residence exemption protects "[t]he debtor's aggregate interest in any property, not to exceed in value [$1,325] plus up to [$12,575] of any unused amount of the exemption provided under [the federal residence exemption, 11 U.S.C. § 522(d)(1)]."  See 11 U.S.C. § 522(d)(5); see also 11 U.S.C. § 104 (providing for periodic adjustment of the dollar amounts set forth in section 522(d)(5)); Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(a) of the Code, 84 Fed. Reg. 3488-01 (Feb. 12, 2019) (adjusting the dollar amounts in section 522(d)(5) for cases commenced after April 1, 2019).  Like Maine's unused residence exemption, the federal statute could be interpreted in a way that might restrict its use to the homeowner, or in a way that might expand its use to the homeowner and non-homeowner alike.  However, the House Report on the bill that later became the federal exemption statute clarifies that section 522(d)(5) was intended to avoid discrimination against the non-homeowner.  H.R. Rep. No. 95-595 at 361 (1977), *reprinted in*

1978 U.S.C.C.A.N. 5963, 6317.  By permitting non-homeowners to take advantage of the unused homestead exemption, Congress intended to give all debtors the same stake in a fresh start.  *See* In re Padilla Cruz, 585 B.R. 255, 264 (Bankr. D.P.R. 2018) ("[T]he legislative history of . . . section [522(d)(5)] makes clear that it was meant to place non-homeowners on equal footing with homeowners in terms of the fresh start policy."); In re Beaudoin, 427 B.R. 30, 38 (Bankr. D. Conn. 2010) ("[T]he legislative history of Section 522(d)(5) reveals that Congress sought to extend the value of the homestead exemption to homeowners and non-homeowners alike.") (footnote omitted); In re LaFlamme, 14 B.R. 21, 24 (B.A.P. 1st Cir. 1981) (discussing legislative history of section 522(d)(5) and noting "Congress' clearly articulated intent to balance the opportunity for a 'fresh start' available to homeowners and nonhomeowners"); *see also* Landry v. Landry, 917 A.2d 1262, 1266 (N.H. 2007) (collecting cases and concluding that an "unused" exemption can be "unused either because there is an unused excess or because the debtor owns no property within a given paragraph and cannot use an exemption").

The history of Maine's unused residence exemption reveals that the Maine Legislature intended to restrict use of the unused residence provision by limiting the type of property that could be exempted.  *See* L.D. 1642, Statement of Fact (110th Legis. 1981); *see also* Me. Rev. Stat. Ann. tit. 14, § 4422(16) (permitting use of the unused residence exemption only for property that could be exempted under Me. Rev. Stat. Ann. tit. 14, § 4422(3), (5), or (14)(D)).  The federal counterpart has no such limitation.  *See* 11 U.S.C. § 522(d)(5) (providing an unused residence exemption for "any property").  Although the two statutes are not identical, there is no indication that the Maine Legislature intended to depart from Congress' intention to make the unused residence exemption available to homeowners and non-homeowners alike.  In dicta, this Court has previously characterized Maine's unused residence exemption as a limited exemption

available to non-homeowners. *See* In re Grindal, 30 B.R. 651, 653 (Bankr. D. Me. 1983). That construction holds today. As such, the Debtors may claim exemptions under section 4422(16) even though they do not own a residence.

The exemptions claimed under section 4422(16) must, however, be claimed in property that may be exempted under Me. Rev. Stat. Ann. tit. 14, § 4422(3), (5), or (14)(D). Here, the parties focus on Maine's household goods exemption, which extends to:

> [t]he debtor's interest, not to exceed $200 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops or musical instruments, that are held primarily for the personal, family or household use of the debtor or a dependent of the debtor.

Me. Rev. Stat. Ann. tit. 14, § 4422(3). TPL asserts that neither artwork nor antiques fit within section 4422(3), and that even if the art and paintings and the antique glass cabinet were properly exemptible, the exemption for each item would be capped at $200. On their Schedule C, the Debtors describe the art and paintings as: "2 Brook Paintings $1,500.00, Orange/Yellow Abstract Painting $200.00, Green Abstract Painting $200.00, 3 Pastels $375.00, 4 Wood Pieces (Driftwood) $200.00, Misc Smaller Pictures $175.00." The Debtors assert that the art and paintings are household furnishings or household goods held primarily for their personal, family, or household use, and that the antique glass cabinet is a household furnishing that they use to store personal property such as dishes. They further contend that they could exempt up to $400 per item under section 4422(3) due to their joint filing, but that this per-item limit does not apply to their exemption claims under section 4422(16).

The Maine exemption statute does not define household furnishings or household goods. *See* Me. Rev. Stat. Ann. tit. 14, § 4421 (defining certain terms but not household furnishings or

- 5 -

household goods).[2]  In the absence of a statutory definition, the Court looks to the plain meaning of the terms, prior decisions concerning section 4422(3), and caselaw construing the same terms in other exemption statutes.[3]  The term "goods" is commonly defined as, among other things, items of personal property.  *See* Merriam-Webster Dictionary 213 (2005).  Definitions of the term "furnishings" include: "an article of furniture for the interior of a building" and "an object or fixture that tends to increase comfort or utility[.]"  *See* Webster's Third New International Dictionary 924 (1976).  This Court has previously held that "household goods" are items that "have a functional nexus to the daily use, maintenance or upkeep of the debtor's household" and may include items that "are convenient or useful to the debtor or his family or that enable them to live in a comfortable and convenient manner[.]"  In re Schreiber, 231 B.R. 17, 18 (Bankr. D. Me. 1999).  Household furnishings must likewise be objects held for personal or family use in the debtor's household.  *See* Me. Rev. Stat. Ann. tit. 14, § 4422(3) (limiting the exemption to items "held primarily for the personal, family or household use of the debtor or a dependent of the debtor"); *see also* William Houston Brown et al., Bankruptcy Exemption Manual § 5:4 (2019) (indicating that "furnishings relate to items routinely used within the household such as

---

[2]  Although "household goods" is defined in another part of the Maine Revised Statutes, there is no indication that the Maine Legislature intended that definition to carry over to the exemption statute.  *See* Me. Rev. Stat. Ann. tit. 11, § 7-1209(4) (defining "household goods" as "furniture, furnishings or personal effects used by the depositor in a dwelling" for purposes of section 7-1209(4)).

[3]  Maine's exemption for household goods and furnishings tracks the language of its federal counterpart.  *See* 11 U.S.C. § 522(d)(3).

furniture or decorative items").[4]

The Debtors met their initial burden of establishing entitlement to the claimed exemptions by identifying the property at issue on their Schedule C and clearly designating the basis for the exemption. See In re Hychko, No. 16-20055, 2019 WL 2142954, at *1 (Bankr. D. Me. May 14, 2019). As the objecting party, TPL bears the burden of proving that the exemptions are not properly claimed. See Fed. R. Bankr. P. 4003(c). TPL has not suggested, let alone proven, that the Debtors do not use the cabinet to store dishes, as they assert. And, TPL has not advanced any evidence that the art and paintings are not held primarily for the personal, family, or household use of the Debtors. Instead, TPL has advanced a legal argument that the items at issue do not qualify for exemption as household goods or household furnishings as a matter of law. The Court declines to embrace this position.

An antique cabinet used to store dishes in the Debtors' home qualifies as a household furnishing. Assuming that the art and paintings are displayed in the Debtors' home, they also constitute household furnishings that enable the Debtors to live in a comfortable manner. See In re Westen, No. 17-40030, 2018 WL 1174888, at *3 (Bankr. E.D. Tex. Mar. 5, 2018)

---

[4] A debtor's ability to exempt household goods

> arises in two overlapping, but distinct, contexts in bankruptcy cases: First, whether a debtor may claim an exemption in certain household items, thereby removing those items from the reach of creditors (which is the issue here); and second, whether a bankruptcy debtor can avoid a nonpossessory, nonpurchase-money lien on such exempt items under § 522(f) of the Bankruptcy Code.

In re Gentry, 519 B.R. 531, 532 (Bankr. W.D. Mo. 2014). In 2005, the Bankruptcy Code was amended to adopt the Federal Trade Commission's definition of "household goods" for purposes of avoiding certain nonpossessory, nonpurchase-money security interests. See H.R. Rep. No. 109-31(I), at 76 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 143; Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 313, 119 Stat. 23 (2005). For those purposes, the term does not include "works of art (unless by or of the debtor, or any relative of the debtor)[.]" 11 U.S.C. § 522(f)(4)(B). Neither party has asked the Court to apply the definition supplied by section 522(f)(4) in this dispute. Ultimately, the Court need not decide whether section 522(f)(4) should somehow inform the meaning of "household goods" under the Maine exemption statute, which was enacted prior to 2005.

(concluding, under the Texas home furnishings exemption, that "to the extent the Artwork is actually used to furnish the Debtors' home and is not being held for investment purposes, it may be claimed as exempt"); In re Bushey, 559 B.R. 766, 780 (Bankr. D.N.M. 2016) (allowing exemption in "wall art" under New Mexico's exemption for "furniture" where there was no evidence that art was used for any purpose other than debtor's personal use in decorating his home); Lucas v. ITT Fin. Servs. (In re Lucas), 77 B.R. 242, 246 (B.A.P. 9th Cir. 1987) (affirming trial court's conclusion that certain decorative figurines were exempt as "household property" under California statute).

The final question is whether the Debtors' exemptions are capped at $200 per-item or capped in the aggregate at $6,000 (setting aside the issue of whether two debtors in a joint case may stack exemptions in jointly owned property). There is no aggregate limit on the value of household goods that can be exempted under Me. Rev. Stat. Ann. tit. 14, § 4422(3). Because there is no aggregate limit under section 4422(3), a debtor could exempt her interest in household goods having an aggregate value of $25,000 (or more), as long as no single item is valued at more than $200. By contrast, section 4422(16) exempts "[t]he debtor's interest, equal to any unused amount of the [residence exemption] but not exceeding $6,000, in any property exempt under [Me. Rev. Stat. Ann. tit. 14, § 4422(3), (5) and (14)(D)]." Me. Rev. Stat. Ann. tit. 14, § 4422(16). If section 4422(16) were construed to incorporate the $200 per-item cap imposed by section 4422(3), then Maine's unused residence exemption would provide no benefit to a debtor who wanted to exempt household goods under section 4422(16). As such, the only sensible interpretation of section 4422(16) does not incorporate the per-item restriction imposed by section 4422(3). Section 4422(16) must therefore permit a debtor to utilize "any unused amount of the exemption" provided by section 4422(1) "but not exceeding $6,000" in the type of

- 8 -

property that may be exempted "under subsections 3 and 5 and subsection 14, paragraph D" of section 4422.  *See* Me. Rev. Stat. Ann. tit. 14, § 4422(16).  Here, the Debtors' exemptions in the cabinet and the artwork are not capped by the per-item dollar limitation found in section 4422(3), and their total unused residence exemptions are well under the aggregate cap of $6,000 supplied by section 4422(16).  A separate order will issue overruling TPL's objection.

Dated: January 10, 2020

                                             Michael A. Fagone
                                             United States Bankruptcy Judge
                                             District of Maine